**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |
|---|---|
| JEREMY SMITH, ) |  |
| ) |  |
| *Plaintiff,* ) |  |
| ) | |
| v. ) | Case No. 1:20-cv-01434 (PTG/IDD) |
| ) | Hon. Patricia Tolliver Giles |
| COX ENTERPRISES INC. WELFARE ) |  |
| BENEFITS PLAN, ) |  |
| ) |  |
| *Defendant.* ) |  |
| ) |  |
| ) |  |

## <u>MEMORANDUM OPINION & ORDER</u>

This matter comes before the Court on the parties' Cross-Motions for Summary Judgment

on the Administrative Record ("Motions"). *See* Dkts. 10, 12. In this ERISA[1] action, Plaintiff

Jeremy Smith, a former Cox Enterprise's, Inc. ("Cox") employee, suffered from a herniated disc

in January 2012. As a result of his medical condition, Plaintiff claims he was totally disabled.

Plaintiff received long-term disability ("LTD") benefits for approximately seven years under an

ERISA-governed employee welfare benefit plan (the "Plan" or "Defendant") until his benefits

were terminated on July 16, 2019. At the time of the benefit termination, claims under the Plan

were administered by Aetna Health ("Aetna").[2] Plaintiff brings his claim for relief from Aetna's

---

[1] Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001
*et seq.*

[2] In November 2017, Hartford Life and Accident Insurance Company ("Hartford") acquired
Aetna's group benefits business. Dkt. 11 at 1 n.1. Aetna appointed Hartford as its attorney-in-fact
to administer the Plan. *Id.* Since Hartford acted on behalf of Aetna as its attorney-in-fact, this
order will refer only to Aetna.

denial of benefits under 29 U.S.C. § 1132(a)(1)(B), alleging Aetna improperly disqualified him for LTD benefits under the Plan's definition of "total disability."  For the reasons that follow, Defendant's Motion (Dkt. 10) is **GRANTED**, and Plaintiff's Motion (Dkt. 12) is **DENIED**.

<h1 align="center">I.    <u>BACKGROUND</u></h1>

### A.    Factual Background

Plaintiff was employed as a Customer Care Technician II at Cox from January 7, 2008 to January 2, 2012.  Administrative Record ("AR") 12, 253.  In this role, Plaintiff provided technical support by phone to Cox's cable and communications customers from an office.  AR 254.  On January 2, 2012, Plaintiff ceased working due to a herniated disc, which caused low back pain. AR 23, 253.  Plaintiff underwent two surgeries:  a lumbar discectomy on January 22, 2012, and a left L4-5 minimally invasive transforaminal lumbar interbody fusion with pedicle screw fixation on March 23, 2012.  AR 853, 1021.  On July 3, 2012, Plaintiff began receiving LTD benefits.  AR 26.  Cox offered these benefits through group policies it purchased from Aetna, which was also the administrator of the Plan.  AR 1315–26, 1333.

The Plan provides a monthly monetary benefit "for a period of total disability caused by a disease or accidental bodily injury" after a six-month waiting period.  AR 1318.  Under the Plan, for the first two years of total disability, a claimant must demonstrate that he is "totally disabled." *Id.*  Under the Plan's definition of "total disability," a claimant is considered "totally disabled" if: "[i]n the first 24 months of a period of total disability: You are not able, solely because of injury or disease, to work at your own occupation."  *Id.*  After the first two years, a claimant must demonstrate that he is "not able, solely because of injury or disease, to work at any reasonable occupation." *Id.*  "[A]ny reasonable occupation" means "any gainful activity for which you are, or may reasonably become, fitted by education, training or experience."  *Id.*  Per the Plan, a period

2

of total disability can end if a claimant: (a) is no longer totally disabled, or (b) fails to supply proof of total disability. AR 1318–19. Claimants are responsible for submitting proof of nature and extent of loss to receive benefits. *See* AR 1325. A claims administrator may request further written proof upon reasonable request, and may also require a claimant to undergo an independent medical examination ("IME"). AR 1324–25.

On August 6, 2015, Aetna requested Plaintiff provide continuing proof of his disability via a periodic physician's statement. AR 300. On November 2, 2015, Dr. George Lin, who had treated Plaintiff for approximately one year at that time, submitted an attending physician statement ("APS") opining that with a number of restrictions and limitations, Plaintiff could work eight hours per day, forty hours per week, as of June 19, 2015. AR 663. On June 12, 2016, the Social Security Administration ("SSA") approved Plaintiff for Social Security Disability Income (SSDI), effective November 2015. AR 787.

Plaintiff continued to seek treatment in the following years. In 2017, Plaintiff began seeing Dr. Tracey O. Pennington for pain management. AR 1149. Dr. Pennington diagnosed Plaintiff with multiple conditions, most notably, lumbar radiculopathy and lumbar post-laminectomy syndrome. AR 1149. Dr. Pennington recommended conservative treatment for Plaintiff's chronic pain. AR 697. On May 3, 2018, Dr. Pennington indicated she reviewed an October 25, 2017 X-ray of Plaintiff's lumbar spine. *Id.* According to Dr. Pennington, the X-ray showed proper facet alignment, unremarkable space height, no changes in spinal fusion, no evidence of hardware complication, no dynamic instability and no evidence of an acute fracture or dislocation. *Id.*

Plaintiff also saw Dr. Barbara Lis, Plaintiff's primary care physician at the time, multiple times between April 17, 2017 and September 17, 2018. AR 701–43, 1158–80. At his first visit, Plaintiff requested a referral for pain management. AR 1170. Beyond that request, Plaintiff mainly

3

saw Dr. Lis for conditions unrelated to his back pain.[3]  AR 701–43, 1158–80.  On September 17, 2018, Dr. Lis performed a wellness exam and concluded Plaintiff had a normal range of motion in all of his extremities and, overall, a normal musculoskeletal exam.  AR 706.

On December 4, 2018, Aetna again requested an updated proof of disability from Plaintiff to assess whether he remained totally disabled.  AR 347–48.  In a resulting questionnaire, Plaintiff indicated he drove eighty miles every day.  AR 1097.[4]  On January 31, 2019, Dr. Steven M. Hartline submitted an APS to Aetna, opining that Plaintiff's functional capacity was limited to two hours per day, twice per week and Plaintiff's "chronic pain would limit his usefulness."  AR 659–60.  At that time, Dr. Hartline had been Plaintiff's doctor for one week.  AR 659.  Dr. Hartline noted that his opinion regarding the number of days and hours Plaintiff could work was based on the opinion of Plaintiff's prior doctor, whom Dr. Hartline did not identify by name.  AR 660.

On March 18, 2019, Holly Shepler, a disability nurse reviewer for Aetna, sent Dr. Hartline a letter seeking clarification and medical evidence regarding his opinion that Plaintiff could only work four hours per week.  AR 363–64.  Shepler opined that while the medical evidence supported certain restrictions, it did not support restriction to two hours per day, two days per week.  AR 364.  She requested that Dr. Hartline respond with clinical documentation supporting his assessment, if

---

[3] Dr. Lis referenced Plaintiff's back pain three times in her progress notes.  In a September 1, 2017 progress note, Dr. Lis (1) listed "chronic midline low back pain without sciatica" as one of Plaintiff's conditions.  AR 1136.  Dr. Lis also indicated Plaintiff was seeing a pain management doctor, Dr. Pennington.  *Id.*  Then, in a September 18, 2018 progress note, Dr. Lis referenced Plaintiff's back pain twice: as (2) part of his "active problem list," and (3) part of Plaintiff's past medical history.  Dr. Lis does not otherwise mention back pain treatment in Plaintiff's progress notes.

[4] Plaintiff notes in his brief that although he indicated he drove eighty miles daily in the questionnaire, he meant that he drives eighty miles with frequent breaks and does not do so every day.  Dkt. 13 at 4 n.4.  Plaintiff indicated to another physician, Dr. Lisa Harris, that he could drive for forty-five minutes.  AR 609 ("He can drive a car up to 45 minutes and needs to stop.").

4

he disagreed with Aetna's assessment, which ultimately found Plaintiff could return to work full time (with restrictions). *Id.* Dr. Hartline responded on April 23, 2019, submitting a visit note from that same day:

> HE DOES NOT EXERCISE 2.5 HRS PER WEEK
> HE CAN WALK FOR ABOUT 15 MINUTES NORMALLY
> ISSUES WITH LOW BACK PAIN. DOES NOT GET CO DOWN INTO LEGS *[sic]*
> HIS MAIN ISSUE IS STAYING IN 1 POSITION FOR MORE THAN 15 MINUTES
> NEEDS TO ALTERNATE BETWEEN SITTING STANDING AND LAYING WILL DO
> EACH FOR 15–20 MIN THROUGH THE DAY.

AR 750.

Due to conflicting opinions between Dr. Hartline and Shepler, Aetna required Plaintiff undergo an IME with Dr. Timothy Lee, a board-certified Occupational Medicine physician, on July 14, 2019. AR 365. Dr. Lee opined that while Plaintiff's restrictions were likely permanent and his reports of pain were credible, Plaintiff could work full time with occasional standing and walking, and frequent sitting. AR 367–73. Dr. Lee opined that if there was a job available that was within Plaintiff's restrictions and limitations, Plaintiff could work for eight hours per day, forty hours per week. AR 371. Aetna ordered a Transferrable Skills Analysis ("TSA") to determine whether there were any jobs Plaintiff could perform, given his restrictions. AR 1071–76. The July 10, 2019 TSA, performed by Maria J. O'Brien, revealed four jobs that Plaintiff could perform within the parameters of Dr. Lee's recommended restrictions: (1) User Support Analyst, (2) Customer Service Representative, (3) Receptionist, and (4) Customer Complaint Clerk. AR 1075–76. On July 16, 2019, Aetna issued a benefits termination letter to Plaintiff, explaining that based on Dr. Lee's IME and the TSA, Plaintiff was no longer "totally disabled" under the Plan. AR 383–85.

In October 2019, Plaintiff began seeing Dr. Victor Tseng for pain management and nerve block treatments. Plaintiff also saw Dr. Tseng's Physician's Assistant, Scott Clingan. AR 647.

Per Dr. Tseng's records, Plaintiff consistently indicated his pain levels averaged a seven out of ten. AR 594. Following his nerve block treatment in October, Plaintiff indicated he experienced a fifty percent improvement. *Id.* Plaintiff also indicated that he experienced a ninety-five percent improvement in his left thigh pain and a sixty percent short-term improvement in his right thigh pain. AR 596. In December, Dr. Tseng indicated Plaintiff had shown a fifty percent (or greater) improvement in symptoms following two medial branch nerve block injections. AR 591.

On November 6, 2019, Plaintiff appealed Aetna's decision to terminate his LTD benefits, arguing his pain and disability continued to increase and he remained disabled. AR 598–99. In support of his appeal, Plaintiff submitted a July 2018 SSDI Consultative Examination Report by Dr. Lisa Harris for Aetna's consideration. AR 608–13. Dr. Harris opined that Plaintiff would be limited to sitting for thirty minutes per hour, walking for fifteen minutes per hour, and standing for fifteen minutes per hour. AR 609.

On February 10, 2020, two additional independent physicians Aetna enlisted rendered opinions on Plaintiff's functional capacity: (1) Dr. Joseph Walker, who is board certified in Physical Medicine and Rehabilitation and has a sub-specialty certification in Pain Medicine; and (2) Dr. Neil Gupta, a board-certified Internist. These physicians are not affiliated with either party. Dr. Walker opined that Plaintiff could sit for a maximum of forty-five minutes at a time (with the ability to change positions) for a cumulative total of six hours per workday; stand for a maximum of thirty minutes at a time (with the ability to change positions), for a cumulative total of four hours; and walk for a maximum of fifteen minutes at a time, for a cumulative total of two hours in an eight-hour workday. AR 516. Dr. Walker concluded that within the described restrictions and limitations, it was "reasonable that [Plaintiff] has sustained functional capacity for 8 hours/day for 5 days/week as of 07/17/19." AR 519. Dr. Gupta opined Plaintiff could stand and walk

6

occasionally and sit constantly with the ability to shift positions briefly while seated as needed for comfort. AR 540. Dr. Gupta concluded that Plaintiff "can sustain full-time work capacity within the restrictions/limitations identified[]." AR 541.

On February 17, 2020, Aetna notified Plaintiff that it would exercise a forty-five-day extension of its appellate review to ensure it had adequate time to review any additional information it received from Plaintiff. AR 395. On April 16, 2020, Aetna affirmed its denial. AR 431–33. Aetna maintained there was "a lack of medical evidence to corroborate [Plaintiff was] unable to perform any reasonable occupation." AR 431.

**B.      Procedural Background**

On November 19, 2020, Plaintiff filed a complaint for disability benefits under ERISA in the United States District Court for the Eastern District of Virginia. Complaint, Dkt. 1. On May 17, 2021, Plaintiff and Defendant, respectively, filed Motions for Summary Judgment on the Administrative Record. *See* Dkts. 10, 12. On June 25, 2021, the parties were heard on Plaintiff's First Motion for Summary Judgment on the Administrative Record (Dkt. 12) before Judge T.S. Ellis, III. Dkt. 20. On November 12, 2021, this case was reassigned to Judge Patricia Tolliver Giles.

## II.      <u>STANDARDS OF REVIEW</u>

**A.      Motion for Summary Judgment on the Administrative Record**

Summary judgment will be granted where, viewing the facts in the light most favorable to the non-moving party, there remains no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Marlow v. Chesterfield Cnty. Sch. Bd.*, 749 F. Supp. 2d 417, 426 (E.D. Va. 2010). When parties file cross motions for summary judgment, the court considers each motion on its own merits to determine whether either party is entitled to judgment as a matter of law. *Krpan v. Registry of*

*Interpreters for the Deaf, Inc.*, 167 F. Supp. 3d 774, 782 (E.D. Va. 2016) (internal citations and quotation marks omitted). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of material fact exists, and that summary judgment should not be granted in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**B.    Framework of Review Under ERISA**

In cases involving a denial of benefits under an employee benefit plan governed by ERISA, the Court applies a unique framework specific to ERISA benefits cases. This framework requires the Court to consider only the evidence before the administrator at the time it rejected the claim. *See Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir.1995). In other words, in evaluating the administrator's decision, the Court is constrained to the administrative record. When, as here, the plan documents grant the fiduciary discretionary authority to interpret its terms, the court's review is limited to the issue of whether the fiduciary abused its discretion in denying the claim. *Bernstein*, 70 F.3d at 787; *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000). The terms of the Plan explicitly state that the claims administrator (Aetna) "is the claim fiduciary with complete discretionary authority to review all denied claims for benefits and to determine whether and to what extent employees and beneficiaries are entitled to benefits." AR 1262. Because the Plan gives Aetna the discretion to make benefits decisions, this Court cannot disturb Aetna's decision if it is reasonable (even if the Court, independently, would have come to a different conclusion). *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 344 (4th Cir. 2000) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). As the parties concede, *see* Dkt. 11 at 18; Dkt. 13 at 19, this confines the Court's decision to

8

whether Aetna's decision to terminate Plaintiff's claims was an unreasonable exercise of discretion.

Under an abuse of discretion standard, the Court will not reverse an administrator's decision if it is reasonable. *Booth*, 201 F.3d at 344; *Williams v. Metro Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010). To be reasonable, "the administrator's decision must result from a 'deliberate, principled reasoning process' and be supported by substantial evidence." *Williams*, 609 F.3d at 630 (quoting *Guthrie v. Nat'l Rural Elec. Coop. Assoc. Long Term Disability Plan*, 509 F.3d 644, 651 (4th Cir. 2007)). The plaintiff bears the burden of proving an administrator abused its discretion. *Case v. Cont'l Cas. Co.*, 289 F. Supp. 2d 732, 737 (E.D. Va. 2003).

The Fourth Circuit considers eight factors in determining whether an administrator's decision was reasonable and based on substantial evidence: (1) the plan language; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which the materials support it; (4) whether the fiduciary's interpretation was consistent with other provisions of the plan and earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have. *Booth*, 201 F.3d at 342–43.

For the following reasons, the Court finds that the evidence before Aetna supports the position that Plaintiff is not "totally disabled" as defined by the Plan. Accordingly, Aetna's decision to terminate Plaintiff's benefits was reasonable, and did not constitute an abuse of discretion.

# III.   DISCUSSION

Plaintiff challenges Aetna's decision to terminate his benefits by specifically targeting only two of the eight factors in *Booth*'s reasonableness inquiry:  (3) the degree to which the materials before Aetna supported its decision and (5) the process by which the decision was made, i.e., whether the decision-making process was reasoned and principled.[5] Dkt. 13 at 21, 24; *see Booth*, 201 F.3d at 342–44.  The Court will address both factors below.

## A.   Aetna's Termination Decision was Supported by Adequate Materials

A claim administrator's decision must be supported by adequate materials and substantial evidence. *Hailey v. Verizon Commc'ns Long Term Disability Plan*, No. 1:13-CV-001528-GBL, 2014 WL 5421242, at *5 (E.D. Va. Oct. 22, 2014) (citing *Helton v. AT&T, Inc.*, 709 F.3d 343, 358–59 (4th Cir. 2013)).  Substantial evidence is evidence that "a reasoning mind would accept as sufficient to support a particular conclusion." *Id.* (internal quotation marks omitted) (quoting *Donnell v. Metro. Life Ins. Co.*, 165 F. App'x 288, 295 (4th Cir. 2006) (unpublished)).  From a quantity perspective, substantial evidence is "more than a scintilla but less than a preponderance." *Brooks v. Hartford Life & Accident Ins. Co.*, 525 F. Supp. 3d 687, 703 (E.D. Va. 2021) (quoting

---

[5] While Plaintiff raised no issue with the fourth *Booth* factor in his motion for summary judgment, he did in his opposition to Defendant's motion for summary judgment. *See* Dkt. 16 at 4–5.  In his opposition, Plaintiff argued that Aetna's interpretation of the Plan was inconsistent with earlier interpretations. *Id.*  Specifically, Plaintiff claims that in 2015, Aetna used Dr. Lin's restrictions and limitations to substantiate a claim for disability; then, in 2019, Aetna used Dr. Lee's virtually identical assessment to terminate Plaintiff's benefits, reaching the opposite conclusion. *Id.* at 5.  While the Court recognizes the similarities in rendering its decision to terminate Plaintiff's benefits.  In 2015, Dr. Lin's opinion was the sole medical opinion before Aetna as it decided whether Plaintiff remained totally disabled.  This was not the case in 2019.  In Aetna's 2019 review of Plaintiff's benefits claim, Aetna had the benefit of three additional physicians' opinions in rendering its decision to terminate Plaintiff's benefits.  Thus, Aetna's 2015 decision was not "inconsistent" because the 2019 termination decision and the subsequent appellate decision were made with significantly more medical evidence—the vast majority of which indicated that Plaintiff could return to work full time. *See* AR 367–373, 507–520, 536–42, 659–60, 701–43, 1146–80.

*Newport News Shipbuilding & Dry Dock Co. v. Cherry*, 326 F.3d 449, 452 (4th Cir. 2003)).

Plaintiff argues that though Aetna had adequate materials, it failed to rely on those materials in deciding to terminate Plaintiff's LTD benefits. Dkt. 13 at 21. However, the Court finds that the materials upon which Aetna based its termination decision—Plaintiff's medical records, an IME report, two independent physician peer review reports, and the 2017 TSA (which are described in-depth in the previous section)—constitute substantial evidence as (1) its quantity represents more than a scintilla and (2) a reasoning mind would accept the materials as sufficient to support the conclusion that Plaintiff was not totally disabled and was capable of working.

Plaintiff specifically takes issue with the fact that Aetna allegedly did not rely on any of the three in-person exams conducted by Dr. Hartline, Dr. Lee, and Dr. Harris—none of which concluded that Plaintiff could sit for most of the workday. Dkt. 13 at 21. Relying on *Neumann v. Prudential Ins. Co. of Am.*, Plaintiff contends that Aetna should have especially deferred to Dr. Hartline because he was Plaintiff's treating physician. 367 F. Supp. 2d 969 (E.D. Va. 2005); Dkt. 13 at 16 n.26, 22–23. The Court disagrees. Dr. Hartline stated, after being Plaintiff's physician for only one week, that the two hour per day, two days per week limitations he opined were based on another doctor's opinion. AR 659–60. It was not unreasonable for Aetna to give less weight to the opinion of a doctor who had only seen Plaintiff for a short time at the time of his APS; had not conducted a full examination; attributed his opinion to an unnamed, prior doctor and the patient's subjective responses (AR 660); and provided incomplete responses.

In *Neumann*, the court held in relevant part that "a plan administrator still must credit the opinion of a treating physician if that physician does a better job" than other treating or examining physicians. 367 F. Supp. 2d at 990. In that case, however, the doctor had been the plaintiff's treating physician for more than a year, and the court found the examining physicians to be more

persuasive. *Id.* at 990–91. In this case, Dr. Hartline had only served as Plaintiff's treating physician for *one week* at the time he submitted his APS. AR 659. Moreover, the record offers no evidence that Dr. Hartline, in fact, did a better job than the other physicians rendering reports in this case, and this Court does not find Dr. Hartline's opinions more persuasive than the other physicians in this case. To the contrary, the record shows that Dr. Hartline's submissions were the least detailed and garnered follow-up questions from Aetna due to a lack of clarity and missing elements in his APS. AR 363–64. Moreover, the APS Dr. Hartline submitted was based primarily on a "prior doctor" who Dr. Hartline failed to identify by name.[6] AR 659–60. Finally, when Aetna requested Dr. Hartline submit clinical documentation to support his conclusion that the Plaintiff could not work full time, he responded with an April 23, 2019 visit note which read, in part:

> HE DOES NOT EXERCISE 2.5 HRS PER WEEK
> HE CAN WALK FOR ABOUT 15 MINUTES NORMALLY
> ISSUES WITH LOW BACK PAIN, DOES NOT GET CO DOWN INTO LEGS *[sic]*
> HIS MAIN ISSUE IS STAYING IN 1 POSITION FOR MORE THAN 15 MINUTES
> NEEDS TO ALTERNATE BETWEEN SITTING STANDING AND LAYING WILL DO
> EACH FOR 15–20 MIN THROUGH THE DAY.

AR 750. This is not clinical documentation and fails to explain the basis for Dr. Hartline's conclusions on Plaintiff's ability to return to work or proposed restrictions. Accordingly, the record does not indicate that Dr. Hartline did "a better job" than the other physicians involved.

Moreover, a claims administrator is "not obliged to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). In *Black & Decker*, the Supreme Court ruled, "courts have no warrant to require administrators

---

[6] The most recent records submitted to Aetna at the time of Dr. Hartline's statement were from Dr. Tracey O. Pennington and Dr. Barbara Lis. AR 701–43, 1146–80. Dr. Lis saw Plaintiff for conditions largely unrelated to the chronic low back pain he asserts renders him disabled. AR 1170–71. Further, neither Dr. Pennington nor Dr. Lis expressly imposed work restrictions, nor did their opinions align with the four-hour work week Dr. Hartline recommended. AR 674–98, 701–43, 1146–80. Thus, they could not have been the source of Dr. Hartline's information.

automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 834.  Accordingly, this Court will not require Aetna to accord special weight to Dr. Hartline's opinion, especially considering that it conflicts with the opinions articulated in several other reliable physician reports.

The medical reviews and conclusions of Dr. Lee, Dr. Walker, and Dr. Gupta constitute adequate materials upon which Aetna could reasonably rely in making its termination decision. *See Griffin v. Hartford Life & Accident Ins. Co.*, 898 F.3d 371, 381–82 (4th Cir. 2018) (upholding termination of benefits where the insurer did not order an IME but relied on an independent medical records review and employability analysis, and where "substantive evidence of [the plaintiff's] current disability was his own self-reporting regarding his condition").  First, Aetna relied on the IME from Dr. Lee, and the Court finds this report was adequate.  Dr. Lee conducted a physical examination of Plaintiff, reviewed his prior medical history, and completed a physical ability assessment.  AR 367–73.  Dr. Lee ultimately opined Plaintiff could return to work full time with certain restrictions.  AR 371, 373.

The opinions of Dr. Gupta and Dr. Walker also provided Aetna substantial evidence to conclude that Plaintiff could return to work.  Dr. Walker listed more than fifty documents that he reviewed in considering Plaintiff's file, including examination reports, MRIs, procedure notes, and notes and APS's from various doctors, including Dr. Lis, Dr. Pennington, Dr. Lin, Dr. Harris, Dr. Lee, Dr. Hartline, and Dr. Tseng.  AR 508–10.  In his report, Dr. Walker explicitly referenced specific diagnoses derived from other doctors, including Dr. Lee, Dr. Hartline, Dr. Lin, and Dr. Pennington.  AR 510–14.  There were no gaps in treatment in the medical records Dr. Walker reviewed.  AR 511.  Dr. Walker also included a detailed review of Plaintiff's prior imaging records,

including five X-Rays and two MRIs of his lumbar spine. AR 511–14. In consideration of these documents and Plaintiff's medical history,[7] Dr. Walker ultimately concluded that Plaintiff had sustained functional capacity for an eight-hour workday for five days per week as of July 17, 2019. AR 519–20. He further opined that Plaintiff could sit for up to a maximum of forty-five minutes at a time with the ability to change positions for a cumulative total of six hours in an eight-hour day.[8] AR 516. This finding was consistent with the conclusions of Dr. Lee and Dr. Gupta. AR 373, 542.

Dr. Gupta similarly considered more than fifty documents of Plaintiff's medical records. AR 537–38. Dr. Gupta also conducted a peer-to-peer consultation with Dr. Hartline. AR 540. Dr. Gupta reported that Dr. Hartline indicated that he had recently become Plaintiff's physician that same year, and indicated he was fairly new with regard to treatment of the claimant. *Id.* This is consistent with the record. *See, e.g.*, AR 659. Dr. Gupta also reported Dr. Hartline indicated Plaintiff could not sit or stand for prolonged periods of times, and Plaintiff felt he could not hold down a job due to that fact. *Id.* Ultimately, Dr. Gupta opined Plaintiff could return to work full time, with certain limitations—most notably that Plaintiff required the ability to sit constantly with the ability to shift positions as needed, and with no more than occasional standing and walking. AR 540–41. As stated, Dr. Gupta, Dr. Lee, and Dr. Walker's opinions were consistent and based on adequate materials.

Aetna also relied on the analysis and results of the TSA performed by the Vocational

---

[7] Dr. Walker also attempted to conduct a peer-to-peer consultation with Dr. Tseng on February 3, 2020 and February 5, 2020. AR 514–15. Dr. Tseng did not return either call. *Id.*

[8] In a prior interview, Plaintiff also indicated that he could drive a car for forty-five minutes per day, which was recorded in Dr. Harris' report, where she notes Plaintiff could "drive a car up to 45 minutes and needs to stop." AR 609.

Expert, Maria J. O'Brien. The Vocational Expert reviewed Plaintiff's work experience prior to his injury, his education, training, and skills. AR 1072–73. She also reviewed his clinical records contained in the referral, and made her determination using a specific software program, the Dictionary of Occupational Titles ("DOT"), the Guide for Occupational Exploration, the Occupational Outlook Handbook, and Bureau of Labor Statistics, among other resources. AR 1072. The Vocational Expert indicated transferrable skills that Plaintiff acquired based on his life experience and work history and identified occupations in which those skills could apply. AR 1073, 1075. The Vocational Expert concluded that there were four sedentary jobs Plaintiff could perform that met "all required criteria, including reasonable wage, education, experience, training and functional capacity." AR 1076.

Finally, it is clear from the record that Aetna also considered Dr. Harris' July 2018 SSDI Consultative Examination Report. When asked to provide proof of his continuing disability, Plaintiff did not initially include Dr. Harris' July 2018 Consultative Examination Report; he only submitted Dr. Harris' report after appealing Aetna's July 16, 2019 benefits decision on November 6, 2019. AR 598–99, 608–13. At that time, Aetna took additional time to consider the evidence. AR 390. Plaintiff repeatedly claims Aetna failed to consider Dr. Harris' report. Plaintiff, however, seems to be conflating the terms "considered" and "relied." Both Dr. Gupta and Dr. Walker, two independent reviewing doctors, referenced Dr. Harris' report as something they reviewed in reaching their medical opinions. AR 508, 510, 537–38. While the doctors considered the report, both Dr. Gupta and Dr. Walker ultimately opined Plaintiff could work full time. AR 519, 541.

Relatedly, Aetna also addressed Plaintiff's SSDI determination in its July 2019 termination letter. AR 384–85. There, Aetna explained that it did not afford the SSDI determination much weight because it was not indicative of why the SSA originally granted Plaintiff SSDI benefits

(which occurred two years prior to Dr. Harris' July 2018 SSDI Consultative Examination Report). AR 385. In its termination letter, Aetna wrote: "We have not been provided with the basis for the SSD determination, and the evidence that was relied on for the SSD determination has not been identified to us. Therefore, even though you are receiving SSD benefits, we are unable to give it significant weight in our determination." AR 385. Given that Dr. Harris' 2018 report was not the basis for the original SSDI determination in 2016, Aetna's decisions with respect to Dr. Harris' report and Plaintiff's SSDI determination were reasonable.

The Court finds the materials Aetna used in coming to its July 16, 2019 decision to terminate Plaintiff's LTD benefits were adequate. Those materials clearly support Aetna's finding that Plaintiff is not totally disabled such that he is unable to perform any reasonable work. Similarly, Aetna relied on adequate materials in affirming its decision in April 2020. First, Dr. Lee, Dr. Gupta, and Dr. Walker all indicated Plaintiff could work full time with certain restrictions. AR 373, AR 519–20, AR 540–41. Then, the Vocational Expert determined the same based on Plaintiff's experience, skills, training, and other factors and ultimately identified four occupations Plaintiff could pursue. AR 1073, 1075. Individually and collectively, these materials support the finding that Plaintiff is not totally disabled and he can return to work full time. As such, Aetna's original benefits determination and decision upholding that determination satisfy the third *Booth* factor.

### B.    Aetna's Decision-Making Process was Reasonable and Principled

Plaintiff contends Aetna's decision to terminate his LTD benefits was not the result of the deliberate and principled reasoning process required by *Booth* for the following reasons: (1) the definition of a sedentary job is incompatible with all examining physicians' opinions, (2) Aetna ignored Plaintiff's claims of pain, (3) Aetna failed to consider Dr. Harris' July 2018 SSDI

Consultative Examination Report, and (4) Aetna failed to explain its reasoning. The Court will address each of these claims below.

First, Plaintiff argues that Aetna's conclusion was arbitrary because the opinions of all of the examining physicians (Drs. Lee, Harris, and Hartline) indicated an ability to sit for five hours or less, while the appropriate standard for sedentary work is the ability to sit for six hours in an eight-hour workday. Dkt. 13 at 22. Relying on several cases outside of the Fourth Circuit, Plaintiff argues that "sedentary" jobs require the ability to sit for six hours. *See* Dkt. 13 at 24–25. Those cases, however, use the standard for sedentary work elicited by the Social Security Administration. *See LaVertu v. Unum Life Ins. Co. of Am.*, No. SACV 13-00332-JLS, 2014 WL 1224736 (C.D. Cal. Mar. 25, 2014) ("According to the Social Security Administration, sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day."); *Wykstra v. Life Ins. Co. of N. Am.*, 849 F.Supp.2d 285, 295 (N.D.N.Y. 2012) (citing to case using the same SSA standard); *Mead v. ReliaStar Life Ins. Co.*, 2008 WL 850675, at *2 n.4 (D. Vt. Mar. 27, 2008) (same); *Alfano v. CIGNA Life Ins. Co. of New York*, 2009 WL 222351, at *18 (S.D.N.Y. Jan. 30, 2009) (same). In its July 16, 2019 termination letter, Aetna indicated that its standards do not always comport with those of the SSA.[9] AR 384–85.

To the contrary, when looking to define a term, the Court may look to objective information such as the DOT. *Mitchell v. Fortis Benefits Ins. Co.*, 163 F. App'x. 183, 190 (4th Cir. 2005) (considering the DOT "objective information" to define a term in an ERISA case); *see also Mullins v. AT & T Corp.*, 424 F. App'x. 217, 224 (4th Cir. 2011) (holding that a plan administrator reasonably relied on the opinions of two doctors and a functional capacity examination indicating

---

[9] That section reads, in relevant part: "We understand that you have been approved for Social Security Disability (SSD) benefits. However, our disability determination and the SSD determination are made independently and are not always the same." AR 384–85.

claimant was capable of "sedentary" work within her limitations, as the term is defined by the DOT); *see also Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 270–71 (4th Cir. 2002), *as amended* (Oct. 24, 2002) (holding that use of the DOT to define claimant's duties was appropriate). According to the DOT, sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Dictionary of Occupational Titles, 4th ed., Appendix C, 1991 WL 688702; *see also Mullins*, 424 F. App'x. at 224. Aetna included this definition in its July 16, 2019 termination letter. AR 384. Moreover, Dr. Lee opined Plaintiff could sit for most (two-thirds) of the day (AR 373), which is all that sedentary jobs require. AR 384.

Despite Plaintiff's references to Dr. Harris and Dr. Hartline's opinions, Aetna's finding that Plaintiff could work four sedentary occupations is consistent with most of the physicians' conclusions, most notably Dr. Lin, Dr. Lee, Dr. Walker, and Dr. Gupta. As Aetna's April 16, 2020 appeal letter notes, the medically supported restrictions "would not preclude [Plaintiff] from performing the occupations" identified in the TSA. AR 432. This conclusion is supported regardless of whether Aetna relied on either Dr. Lee, Dr. Gupta, or Dr. Walker's opinion alone, or a combination of the three. The four sedentary occupations identified in Plaintiff's TSA are compatible with Dr. Lee's opinion that Plaintiff could work at a "reasonable occupation" with restrictions and limitations. Similarly, it is consistent with the restrictions outlined by Dr. Walker and Dr. Gupta, who also opined that Plaintiff could work full time. AR 519, 541.

Dr. Lee indicated Plaintiff could work full time so long as he could limit standing and walking to thirty minutes per hour and change positions every thirty minutes. AR 373. Dr. Walker opined that with certain limitations—including five-minute breaks for every thirty minutes of sitting and bending and walking with a five-minute break every twenty minutes—Plaintiff could

work full time.  AR 518–19.  Dr. Gupta opined that so long as Plaintiff was limited to up to two hours of standing and up to two hours of walking in an eight-hour workday, Plaintiff could return to work full time.  AR 541–42.  All three of these opinions are compatible with the sedentary positions identified in the TSA:  (1) User Support Analyst; (2) Customer Service Representative; (3) Receptionist; and (4) Customer Complaint Clerk.  AR 1073.  Looking at the evidence Aetna had before it, Aetna did not abuse its discretion in determining that Plaintiff could work in a sedentary occupation and its determination was compatible with the opinions and restrictions outlined by Dr. Lee, Dr. Walker, and Dr. Gupta.

Next, Plaintiff argues Aetna failed to consider his pain.  Dkt. 13 at 25–26.  While it is true that a denial of benefits is unreasonable "if the administrator fails to consider all conditions from which the plaintiff suffers[,]" including pain, *Hardt v. Reliance Standard Life Ins. Co.*, 540 F. Supp. 2d 656, 662 (E.D. Va. 2008), the record makes clear that Aetna did consider Plaintiff's pain. Most notably, Dr. Lee, Dr. Walker, and Dr. Gupta all directly referenced and addressed Plaintiff's pain in their reports.  Dr. Lee noted in his IME report, "in addition to consistent pain behaviors, there are increases noted in [Plaintiff's] pulse and blood pressure during pain episodes."  AR 371. Additionally, the basis for Dr. Lee's recommendation that Plaintiff frequently change positions is presumably related to the relief of Plaintiff's pain.  AR 373.  In fact, in Plaintiff's February 13, 2019 interview with senior ability specialist Debbie Oliver, Plaintiff himself affirmed that changing positions alleviates his pain.  AR 254.  Similarly, Dr. Walker and Dr. Gupta indicated that Plaintiff's complaints of pain were credible and consistent.  *See* AR 519, 541.  Based on the record, the Court finds that Aetna considered Plaintiff's pain in its decision, and it was reasonable for it to rely on the aforementioned evidence regarding Plaintiff's pain in its decision to terminate Plaintiff's LTD benefits.

The record also does not support Plaintiff's allegation that Aetna did not consider Dr. Harris' July 2018 SSDI Consultative Examination Report. Dkt. 13 at 27. Per the Plan, the claimant is responsible for providing medical evidence to support their claim. *See* AR 1318–19. However, Plaintiff did not give Aetna Dr. Harris' report until after his November 6, 2019 appeal of Aetna's original termination decision (*see* AR 598–99), though the report is dated July 2018. Upon Plaintiff's notification on December 3, 2019 that he had additional information for Aetna to consider, Aetna exercised a forty-five-day extension to ensure it had time to consider the additional evidence, including Dr. Harris' July 2018 Consultative Examination Report (AR 608–13). AR 395. Aetna indicated that it would postpone its review until January 3, 2019, and Plaintiff could expect a decision by February 17, 2020. *Id.*

Given that Plaintiff did not provide Aetna with Dr. Harris' report until approximately one month after he filed his appeal, the only physicians who could consider the document were Dr. Gupta and Dr. Walker. Both reviewed Dr. Harris' report. AR 508–09, 537–38. The doctors' decision to avoid explicitly relying on Dr. Harris' opinion has no bearing on the fact that they considered the report. Consequently, the record clearly supports the conclusion that Aetna's reviewers (and, therefore, Aetna itself) did consider Dr. Harris' report, though it did not afford it or the SSDI award much weight. In its letter terminating Plaintiff's LTD benefits, Aetna wrote: "We have not been provided with the basis for the SSD determination, and the evidence that was relied on for the SSD determination has not been identified to us. Therefore, even though you are receiving SSD benefits, we are unable to give it significant weight in our determination." AR 385.[10]

---

[10] In its Opposition to Plaintiff's Motion for Summary Judgment, Defendant provides additional reasons for Aetna's decision with respect to Dr. Harris' report. Dkt. 17 at 23. This Court's review is limited to the reasons stated in Aetna's denial notice. *Thompson v. Life Ins. Co. of N. Am.*, 30

Finally, Plaintiff contends Aetna failed to explain its reasoning. The Fourth Circuit requires a plan administrator to state their reasoning in denying a claimant's claim for benefits. *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 235 (4th Cir. 2008). Importantly, the Plan Administrator must address conflicting evidence. *See White v. Eaton Corp. Short Term Disability Plan*, 308 Fed. Appx. 713, 717–18 (4th Cir. 2009). In other words, for its decision to stand, Aetna must also address evidence in favor of Plaintiff's claim that he is totally disabled. The Court finds Aetna did such. It addressed conflicting evidence and articulated why it found the evidence unpersuasive, most notably, Dr. Hartline's opinion regarding Plaintiff's capacity to work. AR 432.

Plaintiff specifically attacks Aetna for failing to explain: (1) how Plaintiff's capacity to sit for 2.6 to 5 hours constitutes an ability to perform sedentary work, (2) why Aetna favored physician peer reviewers over in-person examinations in deciding Plaintiff's appeal, and (3) why Aetna disregarded Dr. Harris' July 2018 SSDI Consultative Examination Report. Dkt. 13 at 28. Again, the record does not support Plaintiff's allegations. The Court addressed Plaintiff's first and third argument at length above. Aetna clearly explained how, based on the reports and opinions of Dr. Lee, Dr. Gupta, and Dr. Walker, it determined Plaintiff could perform sedentary work, and that it considered Dr. Harris' report. Finally, despite Plaintiff's claims to the contrary, Aetna's appeal decision letter indicated that it considered more than just the paper reviewers in its appeal.[11] Aetna indicated that it received and gave full consideration to Plaintiff's clinical information regarding his conditions dated from February 20, 2012 through December 6, 2019. AR 432. Aetna

---

F. App'x 160, 164 (4th Cir. 2002).

[11] Notably, the Fourth Circuit has upheld a termination decision predicated in part on an independent medical records review, without a physical examination. *See, e.g.*, *Griffin*, 898 F.3d at 381–82.

further indicated that certain documentation spoke to Plaintiff's functional capacity for the relevant time period, including that which stemmed from in-person examinations, such as Plaintiff's November 15, 2019 visit with Physician Assistant Scott Clingan. *Id.*

Reviewing the record, Aetna clearly executed a reasonable and principled decision-making process in both its original decision to terminate Plaintiff's LTD benefits and the subsequent decision to uphold that determination. Rather than terminating Plaintiff's claim immediately for lack of continuing objective medical support, Aetna gave Plaintiff multiple opportunities to substantiate his claim, and enlisted multiple doctors to review and opine on his functional capacity. Further, the administrative record Aetna had before it at the time it rendered its decisions supported Aetna's decision to terminate Plaintiff's LTD benefits. Like the administrator in *Booth*, Aetna sought numerous reviews by independent doctors, and considered all medical records and letters submitted by Plaintiff, including documentation from Dr. Hartline and Dr. Harris. Aetna ultimately came to its decision because Dr. Lee, Dr. Gupta, and Dr. Walker all agreed that Plaintiff could work full time with restrictions, and the TSA identified viable options for jobs within those restrictions. There is no evidence in the record that the process by which Aetna came to its conclusion was unprincipled or unreasonable.

Accordingly, this Court will not disturb Aetna's decision.

### IV.    **CONCLUSION**

For the reasons stated above and for good cause shown, Defendant's Motion for Summary Judgment on the Administrative Record (Dkt. 10) is **GRANTED**, and Plaintiff's Motion for

Summary Judgment on the Administrative Record (Dkt. 12) is **DENIED**.

It is **SO ORDERED**.


September 30, 2022                                    Patricia Tolliver Giles
Alexandria, Virginia                                 United States District Judge

23